UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONALD JAMES STEPHENS,

       Petitioner,

v.                                                        Case No.   3:20-cv-374-MMH-PDB

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

       Respondents.

_____

**ORDER**

**I. Status**

Petitioner Donald James Stephens, an inmate of the Florida penal system, initiated this action on April 8, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Stephens challenges a 2013 state court (Duval County, Florida) judgment of conviction for kidnapping, aggravated battery, and two counts of harassing a witness, victim, or informant. He raises three grounds for relief. See Petition at 9-13. Respondents submitted a memorandum in opposition to the Petition.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

See Response (Doc. 8). They also submitted exhibits. See Doc. 8-1 through Doc. 8-29. At the Court's direction, see Doc. 9, Respondents submitted an amended memorandum in opposition to the Petition, see Amended Response (Doc. 10). Stephens has filed a brief in reply. See Reply (Doc. 13). As such, this action is ripe for review.

## II. Relevant Procedural History

In 2010, the State of Florida charged Stephens by information with kidnapping, robbery, aggravated battery, and two counts of harassing a victim, witness, or informant. Doc. 8-3 at 2. The Court appointed a public defender to represent him. Doc. 8-1 at 4. Stephens proceeded to a trial which commenced on July 15, 2013. Id. at 3. During jury selection, Stephens told the court that he was unhappy with counsel and wanted a continuance either to have new counsel appointed or to represent himself and prepare for trial. Doc. 8-11 at 85-101. The court denied Stephens' requests for a continuance, new counsel, and to represent himself. Id. at 97, 100.

Two days later, on July 17, 2013, following a long discussion with the court, defense counsel, and the prosecutor, Stephens decided to enter a guilty plea. Doc. 8-4 at 8-64. He signed a plea agreement in which he agreed to plead guilty to the kidnapping, aggravated battery, and two counts of harassing a

2

victim, witness, or informant charges. Doc. 8-3 at 3-4. In exchange, the State agreed to dismiss the robbery charge and not to pursue a habitual offender sentence. Id. In the plea agreement, Stephens verified he had not been promised he "would actually serve any certain amount of time. . . ." Id. at 3.[3] Before Stephens pleaded guilty, the court clearly explained to him, multiple times, that no one could promise him the exact sentence he would receive, and that he could receive a sentence anywhere between 17.5 years and life imprisonment. Doc. 8-4 at 34-35. Stephens indicated his understanding of these statements. Id. at 34-35, 55. At the conclusion of the lengthy plea colloquy, the trial court accepted Stephens' guilty plea. Id. at 63. After accepting the plea, the trial court heard testimony from the victim, Lisa Hammond Id. at 68-93. At subsequent sentencing hearings, the trial court heard testimony from Stephens and his brother and sister. Id. at 109-27, 136-43. On October 23, 2014, the trial court sentenced Stephens to 34 years of imprisonment on the kidnapping conviction and the two harassing a victim, witness, or informant convictions, and 15 years of imprisonment on the aggravated battery conviction, all terms of imprisonment to run concurrent with the others. Id. at 175-76.

---

[3] Stephens told the court that he read every word of the plea form, went over it with his attorney, and he understood it. Doc. 8-16 at 444-45.

On October 29, 2013, Stephens filed a pro se motion to withdraw his plea. Doc. 8-5 at 2-10. Stephens asserted he was entitled to withdraw his plea because both defense counsel and the prosecutor "verbally promised" him that he would be convicted of only three charges (kidnapping, aggravated battery, and one count of harassing a victim, witness, or informant), not four, and sentenced to 20 years imprisonment, not 34 years. Id. at 2, 5-6. Stephens complained that defense counsel threatened him and coerced him to enter his plea, and that defense counsel failed to comply with his instruction to file a motion to withdraw the plea. Id. at 3-4. Stephens also contended he was entitled to new counsel because he had an "adversarial relationship" with defense counsel. Id. at 4-5. On November 18, 2013, Stephens filed an amended motion to withdraw his plea to make an "unequivocal request to discharge counsel." Doc. 8-6.

On December 9, 2013, the trial court held a hearing during which it found defense counsel had a conflict with Stephens and granted defense counsel's oral motion to withdraw. Doc. 8-18 at 18. On the following day, the court appointed Attorney Michael Bossen to represent Stephens with regard to his motion to withdraw his plea. Id. at 23, 31. On February 12, 2014, Mr. Bossen executed an affidavit in which he attested that: 1) he had reviewed the

4

transcript and listened to the audio recording of the July 17, 2013 plea colloquy; and 2) the transcript and recording revealed a) that the court told Stephens during the colloquy that Stephens could receive a sentence that was more than 17.5 years or there was a slight chance he could receive a sentence less than 17.5 years, and b) the court did not agree to sentence Stephens to 17.5 years. Doc. 8-8 at 76. On March 6, 2014, having determined that Stephens' claims were refuted by the record, the trial court denied Stephens' motion to withdraw his plea. Doc. 8-7 at 2-7.

On direct appeal, Stephens, with the benefit of counsel, filed an initial brief in which he argued that the trial court erred, under Florida law, when it denied Stephens' motion to withdraw his plea without a hearing at which both Stephens and an attorney who "would actually advocate for Stephens" were present. Doc. 8-19 at 19-22. The State filed an answer brief. Doc. 8-20 at 1-30. Florida's First District Court of Appeal (First DCA) per curiam affirmed Stephens' convictions and sentences without a written opinion on April 13, 2015, Doc. 8-21 at 2, and issued the mandate on April 29, 2015. Id. at 3.

On June 22, 2016, Stephens filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 8-9 at 2-11 (Rule 3.850 Motion). In his Rule 3.850 Motion, Stephens alleged counsel was

ineffective for failing to investigate four witnesses (ground one). Id. And, on August 22, 2016, Stephens filed an amended Rule 3.850 motion in which he added a claim that counsel was ineffective for failing to request a competency examination to determine whether Stephens was incompetent when he entered his plea or insane at the time of the crime (ground two). Doc. 8-10 at 11-13. The trial court granted Stephens leave to amend ground two of his motion within 60 days. Doc. 8-1 at 2; Doc. 8-12 at 4. On January 23, 2018, Stephens filed an amended Rule 3.850 motion re-alleging grounds one and two. Doc. 8-12 at 2-19. Ultimately, the postconviction court denied Stephens' amended Rule 3.850 Motion. Doc. 8-11 at 2-101. The First DCA per curiam affirmed the denial of relief without a written opinion on October 8, 2019, Doc. 8-28 at 3-4, and issued the mandate on January 7, 2020, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Stephens'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S.

34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1),

> which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel

satisfied <u>Strickland's</u> deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland's</u> high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Stephens alleges that the trial court erred when it denied his motion to withdraw his guilty plea without a "fair hearing" and without counsel who "was. . .an active advocate for" him. Petition at 9. Stephens also alleges the trial court denied him due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the court "did not hold a hearing[.]" <u>Id.</u> Stephens raised a substantially similar argument on direct appeal, <u>Doc. 8-19 at 19-22</u>; the State filed an answer brief,

13

Doc. 8-20 at 22-36; and the First DCA per curiam affirmed Stephens' convictions and sentences without a written opinion, Doc. 8-21 at 2.

Respondent first argues that to the extent Stephens asserts the trial court erred when it failed to have a hearing, the assertion is a state law claim that is not cognizable on federal habeas review. Response at 26. The Court agrees. The purpose of a federal habeas proceeding is to review the lawfulness of a petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011). As such, "[f]ederal habeas corpus relief does not lie for errors of state law." Id. See also Jamerson v. Secretary for Dept. of Corrections, 410 F.3d 682, 688 (11th Cir. 2005) ("Federal habeas relief is unavailable 'for errors of state law.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

Notably, a federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam). As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). State courts are the

14

> ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. <u>Mendiola v. Estelle</u>, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

<u>McCullough v. Singletary</u>, 967 F.2d 530, 535–36 (11th Cir. 1992), <u>cert. denied</u>, 507 U.S. 975, <u>reh'g denied</u>, 507 U.S. 1046 (1993). Thus, Stephens is not entitled to relief on his claim that a hearing was required under state law.

Stephens also alleges that the trial court's denial of a hearing violated his federal right to due process. In his initial brief on direct appeal, Stephens raised this claim in terms of state law only and did not refer to a due process violation or any other federal constitutional right. <u>See</u> <u>generally</u> <u>Doc. 8-19 at 19-22</u>. Respondent, however, does not argue that Stephens failed to exhaust the federal nature of this claim and instead argues Stephens has failed to demonstrate the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Response at 26-27. Considering the Response, and for purposes of this Order, the Court finds the federal due process violation claim is exhausted and not procedurally barred from review. <u>See</u> <u>Williams v. Fla. Dep't of Corr.</u>, 391 F. App'x 806, 810 (11th Cir. 2010)

("Procedural default is an affirmative defense, and a state waives this defense if it does not allege it in a timely manner during § 2254 proceedings." (<u>citing</u> <u>Moon v. Head</u>, 285 F.3d 1301, 1315 n. 17 (11th Cir. 2002))).

Although not procedurally barred, the claim is nevertheless without merit. Neither federal nor Florida law require that a defendant have an evidentiary hearing simply because he files a motion to withdraw his plea. <u>See</u> <u>United States v. Joseph</u>, 742 F. Supp. 618, 619 (M.D. Fla. 1990) ("A defendant who seeks to withdraw his plea is not automatically entitled to an evidentiary hearing."); <u>Townsend v. State</u>, 927 So. 2d 1064, 1065 (Fla. 4th DCA 2006) ("Under rule 3.170(l), Florida Rules of Criminal Procedure, the trial court is not required to hold an evidentiary hearing on a motion to withdraw plea."). However, due process requires an evidentiary hearing on a motion to withdraw a plea, unless the record conclusively shows the defendant is not entitled to relief. <u>Joseph</u>, 742 F. Supp. at 619 ("[W]here a motion is accompanied by credible third party affidavits or other documentary evidence, an evidentiary hearing is needed."); <u>Townsend</u>, 927 So. 2d at 1065 ("[W]hen the record fails to conclusively refute the defendant's allegation of entitlement to relief [in his motion to withdraw plea], due process requires an evidentiary hearing."). But an evidentiary hearing is not required "[w]here the only evidence in support of

16

the motion to withdraw is the affidavit of a defendant which contradicts his former testimony at the change of plea hearing[.]" <u>Joseph</u>, 742 F. Supp. at 619.

Here, Stephens advanced only his own sworn motion in support of his request to withdraw his guilty plea. <u>Doc. 8-6</u>. And the allegations in the motion that 1) defense counsel coerced Stephens into entering his plea, and 2) defense counsel and the prosecutor promised Stephens he would be convicted only of kidnapping, aggravated assault, and one count of tampering with the victim and sentenced to no more than 20 years, were contradicted by the record.

During the change of plea hearing, the trial court asked Stephens, "Has anybody, including your attorney, threatened you, or coerced you or intimidated you in any way to get you to enter these please, sir?" Stephens responded, "No sir." <u>Doc. 8-4 at 34</u>. Later in the hearing, Stephens again confirmed no one had threatened or coerced him to get him to plead guilty. <u>Id. at 55</u>. And he stated multiple times that no one had promised him anything to get him to enter his plea, other than what was promised in the plea agreement and during the plea hearing. <u>Id. at 33-34, 55</u>. He confirmed that he understood the court could sentence him anywhere between 17.5 years and life in prison and that he could not rely on anyone's statement or guess regarding the sentence he would receive. <u>Id. at 14, 34-35, 55</u>. Finally, the court clearly told

Stephens that the State was "not agreeing to drop Counts 4 and 5 (the tampering charges)." Id. at 13. Moreover, after being shown his plea agreement and given an opportunity to review it again with counsel, Stephens acknowledged that he signed the agreement, had read it again and discussed it with counsel, and affirmed he understood the entire agreement and understood he was pleading guilty to Count 1 (kidnapping), Count 3 (aggravated battery), and Counts 4 and 5 (the two tampering charges). Id. at 22-25.

In denying Stephens' motion to withdraw his plea, the state court found Stephens' allegations were refuted by the record. Doc. 8-7 at 6. This factual finding is entitled to AEDPA deference. 28 U.S.C. § 2254(b)(2). Notably, the record amply supports this factual finding and Stephens has not presented any evidence, much less clear and convincing evidence, to overcome the presumption of correctness of this factual determination. Thus, because the record clearly refuted the allegations in Stephens' motion to withdraw his plea, an evidentiary hearing was unnecessary. Stephens, therefore, was not denied procedural due process. Accordingly, the claim for relief in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Stephens alleges counsel was ineffective when he failed to investigate and call four witnesses: Frank Hornsby; Jeffrey Stephens; Sharon (last name unknown); and Kim (last name unknown). Petition at 11. Stephens asserts the witnesses "would have provided material testimony to exonerate" him. Id. And Stephens contends had counsel investigated and called these witnesses, "[he] would not have taken a plea." Id.

Stephens raised a substantially similar claim as ground one of his amended Rule 3.850 Motion. Doc. 8-10 at 3-11. The postconviction court summarily denied relief:

> Defendant avers counsel was ineffective for failing to investigate and call certain individuals as defense witnesses. Defendant states that due to this alleged deficiency, he should be able to withdraw his plea and proceed to trial.

> Here, Defendant entered a plea of guilty and engaged in a lengthy plea colloquy. (Ex. D.) The plea form, which Defendant signed in acknowledgment thereto, confirmed that Defendant was "completely satisfied with the services rendered by [his] attorney." (Ex. A.) During his plea colloquy, Defendant acknowledged he read the entire form, understood every word, and still wished to enter the plea. (Ex. D at 22-24, 41, 55.) Defendant further reiterated that he was fully satisfied with the work counsel completed in his case during his plea colloquy. (Ex. D at 26.) Therefore, because Defendant entered a plea of guilty and acknowledged he was fully satisfied with counsel, he cannot now bring an ineffective assistance of counsel claim alleging counsel failed to investigate

19

and defend against his charges. See Clift, 43 So. 3d at 779-80; Stano, 520 So. 2d at 280.

Additionally, Defendant acknowledged in his plea form as well as in his plea colloquy that he was giving up certain constitutional rights, including the right to a jury trial. (Exs. A; D at 38, 54.) Indeed, Defendant confirmed he understood that by entering his plea of guilty he was "giving up the right to call witnesses in [his] behalf and then make them come to come [sic] court even if they do not wish to do so." (Ex. D at 39.) Defendant may not now seek to go behind his sworn testimony and make contradictory allegations. See Johnson, 22 So. 3d at 844; Iacono, 930 So. 2d at 831. Accordingly, Defendant is not entitled to relief on this Ground.

Doc. 8-11 at 4-5. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 8-28 at 3-4.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Stephens is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Stephens' claim in Ground Two is without merit. The United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Moreover, under Florida law, "[a] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations." Kelley v. State, 109 So.3d 811, 812-13 (Fla. 1st DCA 2013). By entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So.3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So.2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id. Notably, a defendant "cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to entry of his plea." Davis, 938 So.2d at 557.

Well before Stephens entered his plea, he knew of these witnesses because he alleged they were with him and Hammond during part of the day

on which the offenses occurred. <u>Doc. 8-10 at 3-10</u>. During the plea hearing, the trial court specifically asked Stephens if he understood he was giving up his right to call witnesses on his behalf, and Stephens stated that he understood. <u>Doc. 8-4 at 40</u>. Additionally, Stephens affirmatively stated that he was fully satisfied with his attorney's representation. <u>Id. at 27</u>. And during the plea colloquy, Stephens made no mention of these alleged witnesses or counsel's alleged failure to investigate them. <u>Id. at 6-61</u>.

Based on Stephens' sworn representations, he cannot assert that his plea was involuntary where he knew of the witnesses he claimed would exonerate him but stated he understood he was giving up his right to call those, or any, witnesses by entering his plea. <u>See</u> <u>Davis</u>, 938 So.2d at 557. Simply put, by entering his plea, Stephens waived his right to have his attorney investigate or put forward a defense. <u>See</u> <u>Smith</u>, 41 So. 3d at 1040. Additionally, Stephens cannot go behind his sworn representations that he specifically understood he was waiving his right to call witnesses. <u>See</u> <u>Kelley</u>, 109 So.3d at 812-13. Moreover, Stephens' sworn statement during the plea colloquy regarding his satisfaction with his attorney forecloses his right to collaterally attack counsel's effectiveness regarding investigating and defending his case. <u>See</u> <u>Smith</u>, 41 So. 3d at 1040.

Lastly, even assuming the plea colloquy did not refute this claim, Stephens would not be entitled to relief. First, the Court finds that Stephens' unsubstantiated allegations concerning Frank Hornsby, Sharon, and Kim's purported testimony are facially insufficient to support a claim of ineffective assistance of counsel for failure to call a witness. "Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Having failed to produce such evidence, relief on this claim is due to be denied on the merits concerning those witnesses.

Second, Stephens has failed to show he was prejudiced by counsel's alleged failure to investigate Jeffrey Stephens (Stephens' brother). In the guilty plea context, to show prejudice under Strickland Stephens must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). During the second sentencing hearing, Jeffrey Stephens testified that in the afternoon of the day that the offenses happened, he, Hammond, and Stephens were at his uncle's home. Doc. 8-4 at

137. Hammond and Stephens were drinking, Hammond said she and Stephens were taking pills, and she gave pills to Jeffrey Stephens. Id. Hammond and Stephens left but returned a few hours later with Shelly Newman. Id. at 137-38. Newman told Jeffrey Stephens that she had "beat the brakes off of" Hammond. Id. at 138. Jeffrey Stephens noticed Newman's "face was kind of beat up a little bit." Id. When Jeffrey Stephens asked Hammond whether she "was alright," Hammond answered "yeah." Id. Newman said they needed to leave to pick up Jeremy (Newman and Stephens' son), and she, Hammond, and Stephens left. Id. Jeffrey Stephens went to sleep but his cousin woke him up at approximately 12:00 a.m. and told him Newman had returned in a cab. Id. at 138-39. Jeffrey Stephens told his cousin to "run her off" because he "ain't got nothing to do with them." Id.

At the sentencing hearing Jeffrey Stephens testified that when Hammond and Stephens were at his uncle's house, he, Jeffrey Stephens, had no indication that Stephens had kidnapped or harmed Hammond. Id. at 140. However, Jeffrey Stephens admitted that he did not know what had happened to Hammond after she, Stephens, and Newman left his uncle's home. Id. at 139-40.

Hammond also presented testimony for purposes of sentencing. She stated that Newman had caused some of Hammond's injuries. <u>Id. at 72, 89</u>. However, Stephens had caused the majority of her injuries. <u>Id.</u> It was Stephens who, on two occasions, grabbed Hammond and pulled her back into the car after she tried to escape. <u>Id. at 78</u>. After the second escape attempt, Stephens threw Hammond back in the car, kicked her (breaking her ribs), hit her, and spit on her. <u>Id.</u> She also explained that the kidnapping and batteries occurred between 8:00 p.m. and 7:00 a.m. the next morning. <u>Id. at 87</u>.

Stephens and members of his family subsequently harassed Hammond by calling her cellphone and leaving messages. <u>Id. at 81-82</u>. Hammond was prepared to testify at a trial that Stephens had kidnapped, battered, and robbed her, then harassed her to stop her from testifying against him. <u>Id. at 68-69</u>. The prosecution provided a videotape showing Hammond fleeing from the car, screaming for help, banging on a hotel office door, and Stephens running up to her, putting her in a headlock, and dragging her back to the car. <u>Id. at 57-58, 77-78</u>. Finally, Newman likewise was prepared to testify against Stephens. <u>Id. at 59</u>.[4]

---

[4] Both Newman and Jeremy were convicted of crimes arising from these events. <u>Id. at 162-63</u>.

The evidence against Stephens was overwhelming. Jeffrey Stephens' testimony does little to nothing to contradict Hammond's testimony and the other evidence showing Stephens kidnapped, battered, and subsequently harassed Hammond to prevent her from testifying against Stephens. Jeffrey Stephens admitted he did not know what happened to Hammond after she and the others left his uncle's home, and Hammond's testimony established that Stephens kidnapped and battered her after leaving the uncle's home. At most, Jeffrey Stephens' testimony supports what Hammond herself admitted – that earlier in the evening, Newman and Hammond had a physical altercation with each other.

Considering the overwhelming evidence against Stephens, and the benefits he received by entering his plea (dropping the robbery charge and habitual offender sentences), it would not have been rational for him to proceed to trial. Thus, Stephens has failed to show he was prejudiced by counsel's alleged failure to investigate Jeffrey Stephens as a witness. See Sierra v. Fla. Dep't of Corr., 657 F. App'x 849, 852 (11th Cir. 2016) (where a petitioner has no viable trial defenses, and there is overwhelming evidence of his guilt, the petitioner cannot establish prejudice from counsel's advice to plead guilty). Accordingly, the claim for relief in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Stephens alleges counsel was ineffective when he failed to request a competency examination or pursue an insanity defense. Petition at 13. Stephens asserts that during pretrial proceedings he showed signs of mental illness, an inability to assist his lawyer, and an inability to comprehend the proceedings against him. Id. Additionally, Stephens asserts his family informed counsel of his mental illness. Id.

Stephens raised a substantially similar claim as ground two of his amended Rule 3.850 Motion. Doc. 8-10 at 11-13. The postconviction court summarily denied relief:

Defendant contends counsel was ineffective for failing to request a competency evaluation on Defendant. Defendant suggests he and his family members alerted counsel regarding Defendant's mental health issues and addiction to drugs and alcohol. Defendant maintains he became agitated at many hearings and was not able to conduct himself properly.

Initially, this Court notes the instant Motion is insufficiently pled in that Defendant does not actually allege he is or was incompetent. See Jackson v. State, 29 So. 3d 1161, 1162 (Fla. 1st DCA 2010); Luckey v. State, 979 So. 2d 353, 354 (Fla. 5th DCA 2008). Rather, he states only that he wishes this Court would hold an evidentiary hearing to determine whether he is competent and whether counsel was ineffective for failing to request an evaluation. On November 30, 2017, this Court granted Defendant leave to amend the instant ground. Defendant, however, failed to rectify this insufficiency. This Court is not required to grant

27

Defendant a second opportunity to amend. <u>See</u> Fla. R. Crim. P. 3.850(f)(3). This Ground is, therefore, summarily denied.

In this case, Defendant had plenty of interaction with the trial court. During the plea colloquy, Defendant provided responsive answers to all the court's questions. (Ex. D.) He acknowledged that he was able to think clearly and understood everything and that he was on his only prescribed medication for nerve damage. (Ex. D at 19-20.) Defendant confirmed there was no condition that prevented him from thinking clearly. (Ex. D at 19.) Indeed, at jury selection, Defendant even requested to represent himself. (Ex. E at 70-86.) At that point, while Defendant showed signs of frustration, his answers to the court's questions indicated an understanding. (Ex. E at 70-86.) Drug and alcohol addiction do not automatically render Defendant incompetent. This Court finds that Defendant exhibited no signs to require counsel to file a request for competency determination. While it is clear Defendant did get agitated at hearings in this case, Defendant was facing life imprisonment and emotions are to be expected.

<u>Doc. 8-11 at 5-6</u>. The First DCA per curiam affirmed the denial of relief without a written opinion. <u>Doc. 8-28 at 3-4</u>.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Therefore, Stephens is not entitled to relief on the basis of the ineffectiveness claim.

Here, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. "[T]he conviction of an accused person while he is legally incompetent violates due process[.]" Pate v. Robinson, 383 U.S. 375, 378 (1966). The test for determining a defendant's competency to stand trial or enter a plea is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960).

The record contains no evidence supporting Stephens' contention that he was unable to understand the proceedings against him or assist his counsel. The state postconviction court determined "that [Stephens] exhibited no signs to require counsel to file a request for competency determination." That is a factual finding entitled to a presumption of correctness and can only be refuted by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary[.]" (citing 28 U.S.C. § 2254(e)(1))).

Stephens has failed to provide any evidence, much less clear and convincing evidence, rebutting the presumption of correctness of the state postconviction court's factual finding.

Notably, during the trial court's colloquy with Stephens at the change of plea hearing, Stephens answered questions coherently, appeared to understand the proceedings, and even apologized for his behavior in a previous proceeding. Doc. 8-4 at 6-102. His unspecified "mental illness" and "agitated" behavior during one proceeding do not suggest or establish he was incompetent when he entered his plea. See United States v. Rodriguez, 751 F.3d 1244, 1252 (11th Cir. 2014) ("[A]n allegation of mental illness or other mental disability does not invalidate a guilty plea if the defendant was still competent to enter that plea." (citations omitted)); Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[B]izarre, volatile, and irrational behavior" cannot "be equated with mental incompetence to stand trial.").

To the extent Stephens contends counsel failed to pursue an insanity defense, Stephens cannot prevail because he has failed to present evidence even suggesting that an insanity defense would have been viable. Stephens does not allege (let alone establish) that when he committed the offenses, he did not know what he was doing or its consequences, or that he did not

30

understand what he was doing was wrong. See Fla. Stat. 775.027(1). Stephens' conclusory claim does not support an entitlement to relief. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to merit habeas relief); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

On this record, the Court presumes that counsel made a reasonable decision not to pursue a competency hearing or an insanity defense. See Chandler v. United States, 218 F.3d 1305, 1324 (11th Cir. 2000) ("[G]iven the absence of evidence in the record, we must assume counsel carried out his professional responsibility and discussed mitigation with his client.") (citing Williams v. Head, 185 F.3d 1223, 1235 (11th Cir. 1999)). Stephens points to no evidence supporting his claim other than his implicit, conclusory allegations of incompetency and insanity. He has failed to carry his burden of overcoming the presumption that counsel's decision not to pursue a competency hearing and insanity defense was reasonable. Therefore, relief on the claim in Ground Three is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Stephens seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Stephens "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

32

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Stephens appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any

pending motions.

        **DONE AND ORDERED** at Jacksonville, Florida, this 31st day of July,

2023.


                          MARCIA MORALES HOWARD
                          United States District Judge


TpaP-3
Cc: Donald James Stephens, #317092
        Counsel of Record